## In re SASSMAN.

(District Court, E. D. Pennsylvania. February 8, 1909.)

No. 2,880.

BANKRUPTCY (§ 140*)—PROPERTY VESTING IN TRUSTEE—PROPERTY PAID FOR BY ANOTHER—CONSTRUCTION OF CONTRACT.

Bankrupt was a manufacturer of carpets, largely on orders obtained by claimants from dealers. When such orders were filled, they were charged to claimants, who made an advance thereon and guaranteed collection, charging a commission and interest on the advances. Claimants also made an agreement with the bankrupt under which he bought yarn and had it charged to them. He agreed to use it only on their orders, and they paid the bills therefor, charged the amount to his account and deducted the same, with interest and their usual commission, from the proceeds of the carpet when sold. Certain of such yarn, bought

by the bankrupt, but paid for by claimants, was in his possession at the time of bankruptcy, and was afterwards made up and the carpet shipped on claimants' orders and collected for by them. *Held*, that the yarn was the property of the bankrupt, and not of claimants, the transaction being merely a loan of money by them, and that they were not entitled to withhold the amount paid for the yarn by them from the proceeds of the carpet.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy. On certificate of referee concerning claim of T. J. Keveney & Co.

Julius C. Levi, for claimant.
Alfred Aarons, for trustee.

J. B. McPHERSON, District Judge. The present dispute arises upon the following facts, which are admitted by the parties to be true:

For some time before May 31, 1907, the bankrupt had been manufacturing carpets, buying the materials in his own name. His principal business came through T. J. Keveney & Co., a commission house in New York City, by whom orders for carpets were obtained from dealers and turn .i over to him. When an order was filled, the bankrupt shipped the carpets directly to the. dealer, but charged them to Keveney & Co., and sent the invoices to that firm. Keveney & Co. guaranteed the account, and immediately advanced 80 per cent. thereof, charging a commission of 5 per cent. for selling and guaranteeing, and also charging interest on the advance of 80 per cent. On the discount due date, this date being specified on the order sent by Keveney & Co. to the bankrupt, Keveney & Co. made good the balance of 20 per cent. to the bankrupt, whether or not the dealer had paid the account. The dealer remitted directly to Keveney & Co. On or about May 31, 1907, the bankrupt's credit was so impaired that he could not obtain the necessary worsted yarns. Thereupon he agreed with Keveney & Co., whose credit was good, that yarns should be bought and delivered to the bankrupt, but that the goods should be charged to Keveney & Co. and paid for by them. The agreement appears in the following memorandum:

"May 31, 1907.

"To Whom It may Concern:

"I hereby agree to make and ship all orders I receive from T. J. Keveney & Co. without delay. With regard to worsted yarns, I agree to purchase these at once and have the bills for same forwarded to T. J. Keveney & Co., so that they may pay them for my account, and I agree to use all such yarns on the T. J. Keveney & Co. orders. All yarn bills which T. J. Keveney & Co. paid for my account they are to deduct from my account with them. My purchase will not exceed $500 on worsted yarns. Henry Sassman & Co."

Under this agreement the bankrupt bought yarns, among them the consignment from Kenworthy & Bro. that is now in dispute. The purchase was made by the bankrupt, and the goods were delivered to him; but the account was charged to Keveney & Co., by whom it. was paid. When the carpets were manufactured under the orders transmitted by Keveney & Co., they were billed to that firm at so much a yard. The charge made by the bankrupt was not merely for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the labor of manufacture and for the cost of other materials than the yarns. After the agreement of May 31st, in addition to Keveney & Co.'s commission and the interest on their advances of 80 per cent. they also deducted such sums as they paid on account of yarns that were charged to them under the agreement, together with interest on these sums. At the time of the failure there was no balance due the bankrupt in the hands of Keveney & Co., and therefore they could not deduct the amount of the Kenworthy bill; but, as these yarns were in the bankrupt's possession when the creditors' petition in bankruptcy was filed on August 16, 1907, it was agreed that they should be made up into carpets. Afterwards the carpets were sold by Keveney & Co., who were allowed to retain $552.90 out of the proceeds to await the determination of the present controversy. The referee was asked to award this sum to the claimant firm, but he declined to make the order and dismissed the petition.

Obviously, Keveney & Co. can only succeed in their effort to retain the money if they had the title to the yarns when the proceedings in bankruptcy were begun; and it is this position that is earnestly maintained by their counsel. In my opinion, however, the facts show clearly that the title to the goods was never in Keveney & Co., but was always in the bankrupt. Under the agreement of May 31st, the bankrupt was to buy the yarns, and I see nothing to support the inference that in so doing he was merely acting as Keveney & Co.'s agent. On the contrary, while Keveney & Co. were liable for the yarns, such money as they might pay therefor was to be charged to the bankrupt's account and was to bear interest, thus showing clearly that Keveney & Co. were in reality lending the money and were not buying the goods on their own behalf. They were del credere agents (Clark & Skyles, Agency, p. 968, § 434), guaranteeing payment for the goods that they sold, and also lending their credit to enable the bankrupt to continue the business of manufacturing. But, so far as the evidence shows, the goods in question were the bankrupt's property. He made the contract with Kenworthy & Bro., the yarns were delivered to him, and, so far as appears, he was himself liable for the purchase price, although Keveney & Co. were also liable and were looked to in the first instance. The bill was naturally sent first to them, since it was their credit that induced the sale; but the bankrupt was also liable, and could have been compelled to pay if Keveney & Co. had made default. The argument that the claimants were bailors of the goods necessarily implies that they had title to the property originally, and delivered it, or ordered it to be delivered, to the bankrupt for the purpose of having it manufactured; and the argument must fall if the title passed, not to them, but to the bankrupt himself by his contract of purchase from Kenworthy & Bro. No doubt the bankrupt agreed to use the yarns on Keveney & Co.'s orders, but the very fact that he so agreed shows that such an agreement was considered necessary. It would not have been necessary if the yarns had been bailed to him by the owner for the specific purpose of being worked up; for, in that event, he would have been bound to carry out the bailor's orders without specifically agreeing

so to do. Moreover, Keveney & Co. charged a commission of 5 per cent. for selling and guaranteeing the sales of the carpets, and this certainly implies that they were selling, not their own property, but the property of the bankrupt. If they had bailed the yarns to be made up into carpets, the carpets would have been theirs, and they would hardly have charged a commission for selling their own property.

The decision of the referee (Edward F. Hoffman, Esq.) is affirmed; and it is further ordered that Keveney & Co. pay over to the bankrupt's trustee the sum of $552.90 now in their hands.